**METROPOLITAN SPORTS FACILITIES COMMISSION, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

No. C1–96–1270.

Supreme Court of Minnesota.

April 3, 1997.

Richard L. Evans, McGrann, Shea, Franzen, Carnival, Straughn, and Lamb, Chartered, Minneapolis, for relator.

Michael O. Freeman, Hennepin County Atty., Robert T. Rudy, Sr. Asst. County Atty., Minneapolis, for respondent.

## OPINION

GARDEBRING, Justice.

On writ of certiorari from the tax court, we are asked to determine whether a lease agreement between the Metropolitan Sports Facilities Commission and the Mall of America, for use of the Met Center parking lot in November and December 1994, is exempt from property taxes. We hold that the lease falls within the legislatively defined purposes for which the Metropolitan Sports Facilities Commission may use its property and is therefore a tax-exempt use of the Met Center property.

The Metropolitan Sports Facilities Commission (the Commission) is a public body established by statute for the acquisition, disposition, ownership, operation, and improvement of sports facilities in the metropolitan area. Minn.Stat. §§ 473.551 to 473.599 (1996). The Commission owns property in the City of Bloomington known as the Met Center, which included a building that was operated as a sports facility until its demolition in December 1994.[1] By that time the primary tenant of the building, the North Stars hockey team, had moved out of Minnesota, but throughout most of 1994 the Commission rented the building for ice skating shows, high school athletic events, and other incidental uses. Since early 1994, the Commission has actively pursued the sale of the property.

On November 18, 1994, the Commission entered into a parking agreement with the Mall of America,[2] whereby the Mall was permitted to use 4,200 parking spaces on the Met Center property during November and December 1994 for holiday overflow parking. In exchange, the Mall paid the Commission $350,000. The parties agree that the purpose of entering into the lease was to offset the costs of holding the property pending its sale.

In early January 1995, the Commission received notice from Hennepin County of the County's intent to collect an amount equal to 30% of the rent from the lease "in lieu" of property taxes, based on its determination that the lease was not a tax-exempt use of the Met Center property.

The Commission refused to pay the tax, and instead filed a petition with the tax court.[3] The Commission challenged the tax assessment on the grounds that the Met Center property was exempt from any ad valorem taxes because the property was pub-

---

1. Although the record in this case does not provide information as to the building demolition, we take judicial notice of its date. *See* Norman Draper, *"Immortal" Landmark Met is Blown to Bits—Almost,* Star Trib., Dec. 14, 1994, at A1.

2. The actual party to the agreement is MOA Marketing, Inc., a nonprofit corporation which is primarily engaged in the business of marketing the Mall of America.

3. The County also sought to collect taxes based on an alleged lease of a commercial sign on the property. The Commission argued that the sign was not subject to tax because it was an unauthorized use of the Commission property, and the tax court agreed. This issue is not before us in this appeal.

lic property being used for a public purpose. *See* Minn.Stat. § 272.02, subd. 1(7) (1996). The Commission also challenged the means by which the County sought to impose the tax, arguing that the lease was exempt from ad valorem taxes because it was executed after July 1 of the tax year, Minn.Stat. § 272.02, subd. 4, and that the "in lieu of tax" provision of the property tax code, by which the County sought to get around this limitation, did not apply to this property. *See* Minn.Stat. § 272.68, subd. 3 (1996).

The matter was submitted to the tax court on stipulated facts. The court concluded that the lease was not a tax-exempt use of the property, and that the "in lieu of tax" provisions authorized the County to collect an amount equal to 30% of the rent. We reverse.

■ The answer to the question before us is found in the statutes establishing and governing the Metropolitan Sports Facilities Commission. Questions of statutory construction are questions of law and are fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The application of law to stipulated facts is also a question of law, and thus fully reviewable by this court. *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

In general, all real and personal property is subject to taxation. Minn.Stat. § 272.01, subd. 1 (1996). However, public property used exclusively for any public purpose is exempt from taxation. Minn.Stat. § 272.02, subd. 1(7). The Commission is a public body established for the acquisition, disposition, ownership, operation and improvement of sports facilities in the metropolitan area. Minn.Stat. §§ 473.551 to 473.599. The legislature has declared that Commission property is exempt from taxes as long as it is used for a proper purpose:

> Any real or personal property acquired, owned, leased, controlled, used, or occupied by the commission for any of the purposes of sections 473.551 to 473.599 is declared to be acquired, owned, leased, controlled, used and occupied for public, governmental, and municipal purposes, and

shall be exempt from ad valorem taxation by the state or any political subdivision of the state * * *.

Minn.Stat. § 473.556, subd. 4 (1996). If the Commission leases the Met Center property to another party, however, the property's tax exemption is subject to an examination of the purpose of the lease, as follows:

> The provisions of this subdivision, insofar as they require exemption or special treatment, shall not apply to any real property comprising the met center which is leased by the commission for *residential, business, or commercial development* or other *purposes different from those contemplated in sections 473.551 to 473.599.*

*Id.* (emphasis added). Thus, the tax exemption is lost if the property at issue is leased for development or for purposes inconsistent with those authorized by the Commission's enabling legislation.

The agreement in question here leased the Met Center property to the Mall of America for overflow parking during the Christmas shopping season of 1994. The tax court concluded, and both parties agree, that the lease was not for "residential, business, or commercial development." Thus, the critical question is whether this lease for retail parking was a lease for a purpose "different from those contemplated in sections 473.551 to 473.599."

The County urges us to look only at the statement of the legislative purpose in *forming* the Commission to determine whether the lease was a use of the Commission's property for a purpose "different from those contemplated in sections 473.551 to 473.599." That legislative purpose is set forth in section 473.552; it states that the Commission is established to meet the need of the metropolitan area for sports facilities, which cannot be met by individual municipalities acting alone, nor by private enterprise. Because parking for the Mall of America has nothing to do with sports activities in the metropolitan area, the County argues, the lease does not fit within the legislative purpose.

■ We agree with the County that a reasonable public policy choice might be to

limit the Commission's tax-exempt status to the actual operation of sports facilities, but that is not the choice made by the legislature and that is not what the statute dictates. The Commission's enabling statute, sections 473.551 to 473.599, grants to it the power to manage and use its property in a variety of ways. It may acquire property. Minn.Stat. § 473.556, subd. 3. It may dispose of property. *Id.*, subd. 6. It *may* operate sports facilities on its property. *Id.*, subd. 5 (emphasis added). And, in addition, it is authorized to conduct a wide variety of other activities on its property, including entering into use agreements that "will provide athletic, educational, cultural, commercial or other entertainment, instruction, or activity for the citizens of the metropolitan area." *Id.*, subd. 12. Quite simply, the tax exemption is not limited to the legislative purpose as stated in section 473.552, but extends to uses of Commission property "for *any* of the purposes of sections 473.551 to 473.599." Minn.Stat. § 473.556, subd. 4 (emphasis added). The lease at issue here was an agreement that provided for overflow holiday parking for the Mall of America, an entertainment and retail complex, and therefore, we conclude that the lease was for a "commercial or other entertainment" activity. Based on a reading of the plain language of the statute, the lease falls within the purposes for which the Commission may use its land, and it is therefore exempt from property taxes under section 473.556, subd. 4.

Moreover, we are concerned that the narrow reading of the exemption urged by the County would lead to the result that *all* use agreements for Commission property would be taxable, for how would we distinguish between this lease allowing use of the property for a "commercial or other entertainment" activity and those involving an ice skating show, a car show and sale, or a trade show? There is nothing in the statutes to indicate that these latter use agreements are not tax-exempt uses of Commission property.

■ To this the County responds that it is the operation of the Met Center *building* itself as a sports facility that provides a basis for distinguishing this use agreement from others. That is, as long as there is a sports facility on the property, other non-sports uses are tax-exempt. We are not persuaded by this argument because we see nothing in sections 473.551 to 473.599 that limits the tax exemption to a Commission building that serves as a "sports facility" or to periods during which such a building exists on the property.[4] Indeed, in 1994, *after* the North Stars had left Minnesota, the legislature acted to make clear the existence of a Commission building used as a sports facility was specifically not a pre-condition to its tax exempt status. At that time the legislature amended sections 473.551 to 473.599 to add a definition of the term "Met Center." " 'Met Center' means the *real estate* in the city of Bloomington presently owned by the commission, *formerly* utilized for major league hockey, and all buildings, improvements, and equipment in and on it." Act of May 10, 1994, 1994 Minn. Laws 2702, ch. 648, art. 1, sec. 2 (codified at Minn.Stat. § 473.551, subd. 12) (emphasis added). At the same time, the legislature clarified that non-development uses of the Met Center property for purposes contemplated in sections 473.551 to 473.599 remain tax exempt. 1994 Minn. Laws 2704, ch. 648, art. 1, sec. 6 (codified as Minn.Stat. § 473.556, subd. 4). If the legislature intended for the Met Center's tax exempt status to hinge on the building's use as a sports facility, it could have said so. It did not and, in keeping with our limited role relative to legislative enactments, we decline to read into the statute a provision the legislature "purposely omits or inadvertently

---

**4.** We also note that for most of the term of the lease, the Met Center *was* being operated as a sports facility. The parties stipulated that the building continued to be used for high school athletic events and ice skating shows throughout 1994. The County seems to believe that because the Met Center was no longer a permanent home for a professional sports team that it was no longer a "sports facility." That is not how the term is defined in the statutes. Rather, a "sports facility" is "real or personal property comprising a[n] * * * arena[ ] suitable for university or major league" sports. Minn.Stat. § 473.551, subd. 8. Even though the Met Center was no longer home to the North Stars, it remained an arena suitable for university or major league sports, and continued to be operated as such, according to the stipulated facts, "throughout 1994," or at least until it was demolished on December 13, 1994.

overlooks." *Green Giant Co. v. Commissioner of Revenue,* 534 N.W.2d 710, 712 (Minn.1995); (quoting *Wallace v. Commissioner of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971)).

We therefore hold that the lease between the Mall of America and the Metropolitan Sports Facilities Commission for November and December 1994 was a tax-exempt use of the Met Center property. We come to this conclusion despite our individual views on the propriety of such a broad tax exemption for this public body. As we have said before: "Neither the wisdom of the laws nor their adequacy to accomplish a desired purpose may be taken into consideration by courts in determining what interpretation the laws should have; we must give effect to them as they are * * *." *Norris Grain Co. v. Nordaas,* 46 N.W.2d 94, 105, 232 Minn. 91, 109–10 (1950).[5]

Reversed.

STRINGER, TOMLJANOVICH, and BLATZ, JJ., dissent.

### DISSENTING

STRINGER, Justice (dissenting).

I respectfully dissent. At the time this parking lease was entered into with Mall of America for November and December of 1994, the Met Center facility had largely been abandoned by the Metropolitan Sports Facilities Commission as a sports facility, the Minnesota North Stars had moved to Dallas, Texas, the arena was planned for demolition and the property was for sale on the public market. The property clearly no longer served any part of the purpose of the Commission—to meet the need for facilities to serve the public health, safety and general welfare by establishing "a procedure for the acquisition and betterment of sports facilities * * *." Minn.Stat. § 473.552 (1996). The lease therefore fails to meet the legislative standard for tax exemption.

I start with the principle that all real property is presumed to be subject to tax

and that exempt status is to be narrowly applied. *See* Minn.Stat. § 272.01, subd. 1 (1996); *Color–Ad Packaging v. Commissioner of Revenue,* 428 N.W.2d 806, 811 (Minn. 1988) (Kelley, J., dissenting) ("[E]xemptions in tax statutes are exceptions and are, therefore, to be strictly construed."). This principle is based on the fair and equitable notion that absent a clear expression of legislative policy creating an exemption, the burdens of the cost of public services should fall evenly on all real property that enjoys the benefits. *See Camping & Education Foundation v. State,* 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969) (citations omitted) ("The basis for all tax exemption is the accomplishment of some public purpose as opposed to favoring of particular persons or corporations at the expense of the taxpayers generally."); *De-Ponti Aviation, Inc. v. State,* 280 Minn. 30, 34, 157 N.W.2d 742, 746 (1968) (citations omitted) ("The presumption against tax exemption can only be rebutted by 'clear and express language.'"). Here, not only is there an absence of any indication the legislature intended a lease of the Met Center to the Mall of America for parking purposes under these circumstances to be exempt; the statutory framework clearly indicates the tax exempt status is lost.

Turning first to the statutory provision creating tax exempt status, Minn.Stat. § 473.556, subd. 4, provides tax exempt status to Commission owned, leased, controlled, used or occupied property, but significantly, that tax exemption is lost where the property is "leased by the commission for residential, business, or commercial development or other purposes different from those contemplated in sections 473.551 to 473.599." No development is contemplated by this lease, so we must determine whether the lease is a "different purpose" than is contemplated by the statutory framework. We are assisted in this process by the fact that, in enacting subdivision 4, the legislature evinced a clear intent to eliminate the tax exemption in those instances in which the Commission engaged in traditionally commercial activities. The

---

5. The Commission also challenges the application of the "in lieu of tax" provision of Minn. Stat. § 272.68, subd. 3 to this lease. Because we

hold that the use of the property is exempt from property taxes, we need not decide this issue.

short term rental of the property to the Mall of America is just that; and for purposes here, it is analogous to a lease for commercial development—in both cases, the Commission is engaging in a business activity in competition with private non-tax exempt entities that could have provided land to the mall in the absence of the Commission. Such commercial activity is clearly a purpose different from the Commission's basic mandate of providing sports facilities.

The statute grants the Commission a broad base of powers and authorities, including the power to acquire, lease or dispose of property, to operate the facilities, to enter into contracts, to employ personnel, to accept gifts, to procure insurance and a host of other functions. Minn.Stat. § 473,556, subd. 3–13 (1996). But these are the activities the Commission is *authorized* to engage in—they are not the *purposes* of the Commission. The question of whether the Commission has the *power* to enter into the Mall of America lease is not before us—we assume it does. Our concern is whether in entering into the lease, the Commission was engaging in a purpose for which it was created by the legislature. The only reference to *purpose* in the statutory framework is in section 473.552—"to establish a procedure for the acquisition and betterment of sports facilities"—a broadly stated objective that clearly has as its core the public use and enjoyment of a sports facility. The lease of the Met Center to the Mall of America for parking, under these circumstances, while certainly a fiscally responsible undertaking, clearly does not meet this purpose.

The Commission urges and the majority finds support in Minn.Stat. § 475.556, subd. 12, referencing a number of functions for which the facility may be used: to "provide athletic, educational, cultural, commercial or other entertainment, instruction, or activity for the citizens of the metropolitan area." The Commission's claim of tax exempt status can find no underpinning here, however, first, because again, it is only an authorized power, it is not a purpose. Second, this "use agreements" provision is obviously designed to facilitate very short term booking arrangements for events such as the Shrine Circus,

Ice Follies, conventions and the like—not a two-month lease for shopping mall parking. The more compelling inference is that because these use agreements are specifically authorized, a lease to the Mall of America for November and December 1994 for parking purposes, after the property has been abandoned as a sports facility, would *not* be one of the purposes contemplated in the statutory framework.

Finally, turning again to Minn.Stat. § 473.552, "Legislative Policy; Purpose," the legislature found that "the population in the metropolitan area has a need for sports facilities and that this need cannot be met adequately by the activities of individual municipalities, by agreements among municipalities, or by the private efforts of the people in the metropolitan area * * *." There is a perversity in the majority's conclusion that a purpose of the statutory framework is met by holding tax exempt property that is now being leased by the Commission in competition with private tax-paying enterprises engaged in offering parking facilities. Nothing in the statutory structure of sections 473.551 through 473.559 suggests that this is what the legislature intended.

I would affirm the tax court.

TOMLJANOVICH, Justice.

I join in the dissent of Justice Stringer.

BLATZ, Justice.

I join in the dissent of Justice Stringer.