**CLOVERDALE FOODS OF MINNESOTA, INC.,**
Appellant,

v.

**PIONEER SNACKS, a Michigan Corporation, Respondent.**

No. C8–97–1616.

Court of Appeals of Minnesota.

June 9, 1998.

---

John F. Bonner, III, Leona E. Lewis, Malkerson Gilliland Martin LLP, Minneapolis, for appellant.

George R. Serdar, Madhulika Jain, Elizabeth L. Plitzuweit, Messerli & Kramer P.A., Minneapolis, for respondent.

Considered and decided by PETERSON, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

PETERSON, Judge.

In this unlawful detainer action, appellant Cloverdale Foods of Minnesota, Inc., appeals from a jury verdict in favor of its tenant, respondent Pioneer Snacks, Inc. We reverse and remand.

## FACTS

Cloverdale leased a commercial food packaging and processing plant to Pioneer. The lease agreement provided:

> Tenant agrees to comply with all laws, ordinances, orders, rules or regulations (state, federal, municipal or promulgated by other agencies or bodies having any jurisdiction thereof) relating to the use, condition or occupancy of the Leased Premises.
>
> * * * *
>
> * * * Tenant will not make any alterations, repairs, additions or improvements in or to the leased premises or add or subtract plumbing or wiring therein without the prior written consent of the Landlord (which will not be unreasonably withheld) as to the character of the alterations, additions, or improvements to be made to the Leased Premises.

The lease also provided that if the tenant defaulted on any of the lease conditions and the default continued for ten days after the landlord gave the tenant written notice of the default, the landlord had the option to declare the lease agreement forfeited and its term ended.

Robert George, president of Pioneer, testified that Pioneer was required to make alterations to the plant to comply with United States Department of Agriculture (USDA) regulations. USDA agent Arlen Stegenga testified that the USDA directed Pioneer to make changes to the equipment wash room and in product flow to reduce the possibility of contamination. Stegenga testified that he had authority to shut down a plant for noncompliance with USDA regulations.

To comply with the USDA directives, Pioneer added and altered walls, floor drains, doors, and electrical work. Pioneer did not apply for building permits before making the changes. George testified that Larry Huether, Cloverdale's plant manager, visited the Pioneer plant during the spring of 1996, before the changes were made, and that Pioneer staff showed Huether exactly what changes were going to be made to the plant. George testified that Huether did not object to any of the proposed changes and commented that the proposed changes looked "really good."

After the changes had been made, Cloverdale sent Pioneer a letter stating that Pioneer was in default under the lease agreement for failing to obtain building permits and Cloverdale's consent before making the changes. The letter specified the changes to which Cloverdale objected. The letter stated that if Pioneer failed to cure the defaults within ten days, the lease would be terminated.

When Pioneer failed to cure the alleged defaults within ten days, Cloverdale began this unlawful detainer action. Pioneer denied that the changes it had made to the plant constituted a material breach of the lease agreement. Pioneer also contended

that Cloverdale brought this action in retaliation for Pioneer's assertion of its rights in an unrelated federal breach of contract action between Pioneer and Cloverdale.

After Cloverdale began this action, Pioneer applied to the City of Mankato for building permits for the changes. George testified that Pioneer was working with city inspectors to bring the plant into compliance with city regulations and that the only remaining problems were safety issues, such as fire extinguishers and exit signs.

## ISSUES

I. Did the trial court err in denying Cloverdale's motion for a directed verdict?

II. Is the retaliatory eviction defense applicable to this case?

III. Did the trial court err in admitting evidence about the federal action between Cloverdale and Pioneer?

## ANALYSIS

### I.

A motion for a directed verdict presents a question of law regarding the sufficiency of the evidence to raise a fact question for the jury's decision. For purposes of the motion, the trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may reasonably be drawn from the evidence.

*Midland Nat'l Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn.1980) (citation omitted).

■ An unlawful detainer action is "a summary proceeding to quickly determine present possessory rights." *Eagan East Ltd. Partnership v. Powers Investigations, Inc.*, 554 N.W.2d 621, 622 (Minn.App.1996).

The plaintiff must plead and prove facts which show the defendant is in unlawful possession of property. Generally the only issue for trial is whether the facts alleged in the complaint are true.

*Mac–Du Properties v. LaBresh*, 392 N.W.2d 315, 317 (Minn.App.1986), *review denied* (Minn. Oct. 29, 1986).

■ Cloverdale argues that it was entitled to a directed verdict because the undisputed facts showed that Pioneer made alterations to the plant without obtaining building permits and Cloverdale's consent and that Pioneer did not cure those alleged defaults within ten days after being given notice by Cloverdale. But the general rule applicable to contracts is that rescission of a contract is justified only by a material breach or substantial failure in performance. *Cut Price Super Markets v. Kingpin Foods, Inc.*, 256 Minn. 339, 351, 98 N.W.2d 257, 266 (1959). The general rule is consistent with the principle that forfeitures are disfavored. *Kostakes v. Daly*, 246 Minn. 312, 318, 75 N.W.2d 191, 195 (1956) (reversing judgment in favor of plaintiff in unlawful detainer action when plaintiff "stood idly by while [defendant] invested a large sum of money in the property"); *see also Trollen v. City of Wabasha*, 287 N.W.2d 645 (Minn.1979) (upholding trial court's conclusion that equity relieved lessee from strict compliance with lease provision requiring that notice of renewal be given six months prior to expiration of rental period). As a result, to determine present possessory rights in this case, it was necessary to determine not only the truth of the allegations in the complaint, but also whether the allegations, if found to be true, demonstrated a material breach of the lease agreement. *Cf. LaBresh*, 392 N.W.2d at 318–19 (trial court erred by failing to make findings on whether nonpayment of rent breached provisions in lease agreement).

Pioneer presented evidence that it was working with city inspectors to bring the plant into compliance with city regulations and that no significant problems existed. Pioneer also presented evidence that Huether orally approved the changes before they were made. Finally, the lease provided that Cloverdale could not unreasonably withhold consent to improvements, and Pioneer presented evidence that many of the alterations were required to comply with USDA regulations. The evidence was sufficient to raise a fact question regarding whether Pioneer materially breached the lease agreement. *Juvland v. Plaisance*, 255 Minn. 262, 269–70, 96 N.W.2d 537, 542 (1959) (fact question raised

concerning whether party materially or substantially breached a contract). The trial court did not err in denying Cloverdale's motion for a directed verdict.

## II.

Statutory interpretation is a question of law subject to de novo review. *Metropolitan Sports Facilities Comm'n v. County of Hennepin,* 561 N.W.2d 513, 515 (Minn. 1997). The object of statutory interpretation is to determine and give effect to the legislature's intent. Minn.Stat. § 645.16 (1996). When the words in a statute are clear and unambiguous, a court must give effect to the plain meaning of the language. *Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). If a statute is ambiguous, the legislature's intent must be determined by examining the need for the law, the circumstances of its enactment, the mischief to be remedied, the purpose of the statute, the prior law, if any, the consequences of an interpretation, the legislative history, and the legislative and administrative interpretations of the law. Minn.Stat. § 645.16.

Minn.Stat. § 566.03 (1996) provides:

Subdivision 1. The person entitled to the premises may recover possession in the manner provided in this section when:

\* \* \* \*

(2) any person holds over land or tenements after termination of the time for which they are demised or let to that person or to the persons under whom that person holds possession, or contrary to the conditions or covenants of the lease or agreement under which that person holds, or after any rent becomes due according to the terms of such lease or agreement; or

(3) any tenant at will holds over after the determination of the estate by notice to quit.

Subd. 2. It shall be a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove by a fair preponderance of the evidence that:

(1) The alleged termination was intended in whole or part as a penalty for the defendant's good faith attempt to secure or enforce rights under a lease or contract, oral or written, or under the laws of the state, any of its governmental subdivisions, or of the United States; or

(2) The alleged termination was intended in whole or in part as a penalty for the defendant's good faith report to a governmental authority of the plaintiff's violation of any health, safety, housing or building codes or ordinances.

If the notice to quit was served within 90 days of the date of any act of the tenant coming within the terms of clause (1) or (2) the burden of proving the notice to quit was not served in whole or part for a retaliatory purpose shall rest with the plaintiff.

Cloverdale first argues that a commercial tenant should not be allowed to assert a retaliatory eviction defense under Minn.Stat. § 566.03, subd. 2. Cloverdale argues that allowing a commercial tenant to assert the defense is inconsistent with the policy underlying the defense. *See Parkin v. Fitzgerald,* 307 Minn. 423, 427, 240 N.W.2d 828, 831 (1976) (purpose of retaliatory eviction defense is to provide "the tenant with substantial weapons in his day-to-day struggle for decent-quality housing").

Minnesota's appellate courts have applied Minn.Stat. § 566.03, subd. 1, which sets forth the circumstances under which a landlord may recover possession by an unlawful detainer action, to unlawful detainer actions brought by landlords of commercial property. *See, e.g., 614 Co. v. D.H. Overmyer Co., Inc.,* 297 Minn. 395, 211 N.W.2d 891 (1973); *Priordale Mall Investors v. Farrington,* 411 N.W.2d 582 (Minn.App.1987); *LaBresh,* 392 N.W.2d at 315. The *614 Co.* court expressly stated that Minn.Stat. § 566.03, subd. 1, applied to a default in paying rent by a warehouse tenant. 297 Minn. at 396, 211 N.W.2d at 893.

Minn.Stat. § 566.03, subd. 2, refers to the defendant in an unlawful detainer action and makes no distinction between residential and commercial tenants. Because Minn.Stat. § 566.03, subd. 1, applies to commercial leases and Minn.Stat. § 566.03, subd. 2, does not distinguish between commercial and residential tenants, we conclude that a commercial

tenant can assert a retaliatory eviction defense under Minn.Stat. § 566.03, subd. 2. *Cf. 614 Co.,* 297 Minn. at 397–98, 211 N.W.2d at 894 (after noting policy concerns implicit in the right of redemption, the court concluded that right of redemption applied to commercial leases because statute made no distinction between commercial and residential leases).

■ Cloverdale also contends that the retaliatory eviction defense is inapplicable to this case because the defense only applies when a tenancy is terminated by a notice to quit. The retaliatory eviction defense applies "to an action for recovery of premises following the alleged termination of a tenancy by notice to quit." Minn.Stat. § 566.03, subd. 2. Minn.Stat. § 566.03, subd. 1, expressly distinguishes between a tenancy that is terminated based on a breach of the lease and a tenancy that is terminated by a notice to quit. Under Minn.Stat. § 566.03, subd. 1, a landlord can bring an unlawful detainer action to recover possession of premises when a tenant "holds over land or tenements * * * contrary to the *conditions or covenants* of the lease or agreement under which that person holds" or when "any tenant at will holds over after the termination of the estate by notice to quit." Minn.Stat. § 566.03, subd. 1(2)-(3); *see also* Minn.Stat. § 504.06 (1996) (written notice to quit required to terminate estate at will). Because Cloverdale brought this action under Minn.Stat. § 566.03, subd. 1(2), seeking to terminate the tenancy based on Pioneer's alleged breach of lease conditions, we conclude that the retaliatory eviction defense does not apply to this case.

■ We also conclude that the retaliatory eviction defense does not apply to this case because the assertion of contractual rights on which Pioneer based its retaliatory eviction defense was Pioneer's participation in a federal action between Cloverdale and Pioneer that was unrelated to the landlord-tenant relationship between the two parties. Minn.Stat. § 566.03, subd. 2(1), provides that the retaliatory eviction defense applies when a landlord seeks to terminate a tenancy

> as a penalty for the defendant's good faith attempt to secure or enforce rights under

a lease or contract, oral or written, or under the laws of the state * * *.

The fact that the term "contract" follows the term "lease" and is contained in the same clause indicates that the legislature intended the two terms to have similar meanings. *See* Minn.Stat. § 645.08(3) (1996) ("[g]eneral words are construed to be restricted in their meaning by preceding particular words"). We, therefore, construe the term contract to mean a contract governing the landlord-tenant relationship. Our construction is supported by Minn.Stat. § 566.03, subd. 2(2), which applies the retaliatory eviction defense only to the reporting of types of violations generally associated with housing or building conditions, not lawsuits or other disputes.

### III.

■ The trial court has discretion to admit or exclude evidence, and its decision will not be reversed unless it was an abuse of discretion or based on an erroneous view of the law. *TMG Life Ins. Co. v. County of Goodhue,* 540 N.W.2d 848, 851 (Minn.1995). A party is not entitled to reversal of a judgment based on an erroneous evidentiary ruling unless the party demonstrates that the error was prejudicial. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990). An evidentiary error is prejudicial if the error might reasonably have changed the result of the trial. *See Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983) (erroneous exclusion of evidence); *see also State v. Bolte,* 530 N.W.2d 191, 198 (Minn.1995) (error in admitting evidence is prejudicial "if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the evidence had not been admitted").

■ The evidence regarding the federal action was relevant only to the retaliatory eviction defense. Because the retaliatory eviction defense does not apply to this case, the evidence was irrelevant to this case. Irrelevant evidence is inadmissible. Minn. R. Evid. 402. The trial court, therefore, erred in admitting the evidence.

The evidence regarding the federal action included evidence that the relationship between the parties was very hostile and that

Pioneer was awarded a $264,000 verdict in the federal action. The improperly admitted evidence might reasonably have influenced the jury's consideration of the evidence regarding the breach of contract issue and changed the result of the trial. The error in admitting the evidence was prejudicial.

## DECISION

The trial court did not err in denying Cloverdale's motion for a directed verdict because the evidence was sufficient to raise a fact question regarding whether Pioneer materially breached the lease agreement. The retaliatory eviction defense does not apply to this case. The trial court, therefore, erred in admitting the evidence regarding the federal action between Pioneer and Cloverdale. Because the error was prejudicial, Cloverdale is entitled to a new trial.

**Reversed and remanded.**

LANSING, Judge (concurring specially).

Pioneer Snacks predicates its retaliatory eviction defense on the assertion of contract rights that were unrelated to its landlord-tenant relationship with Cloverdale Foods. I concur in the majority's analysis that the retaliatory eviction defense contained in Minn.Stat. § 566.03, subds. 2(1) and 2(2), applies to contract rights governing a landlord-tenant relationship, generally relating to types of violations associated with housing or building conditions. Because this holding is dispositive on the retaliatory eviction issue, I would not reach the alternative bases.