*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2022**

Lucas Heikkila, individually and o/b/o Minor Children, petitioner,
Respondent,

vs.

Jeff Dietman,
Appellant.

**Filed June 20, 2016
Affirmed in part and reversed in part, and remanded
Stauber, Judge**

Lake County District Court
File No. 38-CV-15-342

Russell L. Conrow, Conrow Law Office, Two Harbors, Minnesota (for respondent)

Paul F. Carlson, Matthew S. Van Bruggen, Kennedy, Carlson & Van Bruggen, L.L.P.,
Wadena, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Kirk,
Judge.

# U N P U B L I S H E D   O P I N I O N

**STAUBER**, Judge

Appellant challenges the district court's ex parte temporary harassment restraining
order (THRO) and subsequent harassment restraining order (HRO), arguing: (1) the
evidence was insufficient to support the THRO; (2) the district court abused its discretion
in excluding testimony of appellant's intent; (3) the evidence was insufficient to support

the HRO; and (4) the district court erred by including respondent's children in the HRO. We conclude that the ex parte THRO is not an appealable order. We affirm the district court's HRO with regard to respondent, but reverse the HRO with regard to respondent's children.

## FACTS

On July 30, 2015, appellant Jeff Dietman learned that his wife, K.D., was in a romantic relationship with respondent Lucas Heikkila. After appellant discovered sexually explicit emails and pictures of K.D. and respondent, he called K.D. at work and said he was "freaking out," and that he needed to talk to her. K.D. drove from Two Harbors to appellant's home in Staples and surreptitiously recorded their conversation on her phone. While speaking to K.D., appellant was angry and shouted at her. Appellant told K.D., "I will find him," and "Don't make me see him. I'll run right over him. I don't care. I don't f---ing care." Appellant also stated, "When I figure out who he is that motorcycle of his is going right underneath this motherf---er," apparently referring to his truck. K.D. sent the recording to respondent, who lives in Two Harbors.

On August 21, 2015, respondent received a text message from an unidentified number asking respondent if he was "Maggie"—respondent's contact name in K.D.'s phone. The text messenger informed respondent that "a storm was coming," and that respondent needed to seek shelter. As a result, respondent petitioned the district court for an ex parte HRO.

On this information, the district court issued an ex parte THRO and scheduled a hearing on the petition for October 19, 2015.

2

On September 27 and 28, 2015, K.D. recorded two more conversations with appellant. On the 27th, appellant stated:

- "Do you have any idea about how close I was to f---ing just showing up? Do you know how f---ing sick I am of this motherf---er."

- "At this point he can't hide."

- "God, part of me wants to kick down his door in and say 'I'm here motherf---er!'"

- "I'm just waiting for this [divorce] to be over with. And that's when I am turning his world upside down."

On September 28 appellant told K.D. he had people checking on her while she stayed with respondent, and said:

> You know what's going to happen. You know the outcome of this without me saying it. . . . Do you think, I'm going to let this go? You're foolish. . . . I'm going to finish this. . . . You are going to be the reason that bad things happen, because of you.

K.D. sent respondent both recordings.

At the October 19, 2015 HRO hearing, counsel for appellant asked K.D. if July 30, 2015, was the day that appellant first became aware of certain "salacious details" regarding K.D. and respondent. In response to respondent's relevancy objection, counsel for appellant asserted that this information was relevant to show appellant's state of mind and intent, especially on July 30, 2015, because "some of the things that were said are defensible based on the fact that he—his world was shattered on that day." The district court sustained the objection and excluded the testimony.

3

The district court granted the HRO on October 21, 2015, finding reasonable grounds to believe that appellant harassed respondent because appellant frightened respondent with multiple threats made through a third party. The district court also found that the nature of the threats supported a reasonable need to include respondent's minor children in the HRO. Appellant appeals both the ex parte THRO and the HRO.

## D E C I S I O N

## I.

Appellant argues that the evidence was insufficient to issue the ex parte THRO. Generally, ex parte orders are not appealable, and therefore an ex parte THRO is not appealable. *See Fiduciary Found., LLC ex rel. Rothfusz v. Brown*, 834 N.W.2d 756, 761, (Minn. App. 2013) (quotations omitted) (finding the same for an ex parte HRO), *review denied* (Minn. Sept. 17, 2013). In *Brown* this court found that while an ex parte HRO by itself is not appealable, the order denying Brown's motion to vacate an ex parte HRO was appealable under Minn. R. Civ. App. P. 103.03(g), because the order was final, was made in a special proceeding, and affected Brown's substantial rights in that it "finally determined whether [Brown] could obtain a hearing regarding the ex parte HRO." 834 N.W.2d at 761. The ex parte THRO here was not a final order affecting appellant's substantial rights because it was in effect only from its issuance until the October 19, 2015 hearing was held. *See* Minn Stat. § 609.748, subd. 4(d) (2014) (providing an ex parte THRO is in effect until a hearing is held on the issuance of a restraining order under subdivision 5). Because the ex parte THRO was not a final order affecting appellant's substantial rights it is not appealable.

Appellant further argues that the ex parte THRO is reviewable under Minn. R. Civ. App. P. 103.04 because it affects the final HRO in that the THRO's "erroneous issuance permitted the [district] court to hold a hearing . . . which led to the harassment restraining order." However, an HRO is issued only after a full hearing at which a court independently finds "reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5 (2014). Appellant cites no law requiring a district court to rely in any fashion on a previously issued THRO before issuing an HRO. The THRO, therefore, does not constitute an order affecting the HRO.

Finally, even if the ex parte THRO was appealable and reviewable we would find the evidence was sufficient for its issuance. Appellant's July 30, 2015 statements to his wife regarding respondent, and the August 21, 2015 text messages are reasonable grounds to believe that appellant engaged in harassment, and that there was an immediate and present danger of harassment.

## II.

Appellant next argues that the district court erred in excluding testimony of appellant's knowledge of the details of K.D.'s sexual relationship with respondent. Evidentiary rulings are within the district court's sound discretion and will be reversed only when that discretion has been clearly abused. *Johnson v. Washington Cty.*, 518 N.W.2d 594, 601 (Minn. 1994). Only relevant evidence is admissible. Minn. R. Evid. 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401.

Entitlement to a new hearing on the grounds of erroneous evidentiary rulings rests upon appellant's ability to demonstrate prejudicial error. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 46 (Minn. 1997). An evidentiary error is prejudicial if the error might reasonably have changed the result of the trial. *Cloverdale Foods of Minnesota, Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 51 (Minn. App. 1998).

Here, appellant sought to elicit testimony showing that he first learned details of his wife's sexual relationship with respondent on July 30, 2015. The purpose of the question was to show that appellant's conduct on that date was merely "a spur of the moment product of emotion upheaval" in response to that information and that he lacked intent to harm or harass respondent.

Appellant cannot demonstrate prejudice. Appellant was able to advance his lack-of-intent theory multiple times during the HRO hearing. The district court also had ample evidence of appellant's other harassing behavior from three later incidents that were far removed from appellant's first learning of his wife's new relationship. Therefore, admission of this testimony would not reasonably change the result of the hearing, and appellant cannot show prejudice.

**III.**

Appellant next argues that the evidence was insufficient to support issuance of the HRO, which we review for abuse of discretion. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). A court may issue an HRO if it finds that "there are reasonable grounds to believe that the [actor] has engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3). Harassment includes "repeated incidents of intrusive or unwanted acts,

6

words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." *Id.*, subd. 1(a)(1). To obtain an HRO, the petitioner must prove: (1) "objectively unreasonable conduct or intent on the part of the harasser" and (2) "an objectively reasonable belief on the part of the person subject to harassing conduct" of a substantial adverse effect on the person's safety, security, or privacy. *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006).

### A.    Repeated intrusive or unwanted acts, words, or gestures

The record contains sufficient evidence to support the district court's conclusion that there were reasonable grounds to believe that appellant harassed respondent because appellant frightened respondent with multiple threats made through a third party. On July 30, 2015, appellant said he would find respondent and run him over with his truck. Appellant threatened to find respondent and asked K.D. where respondent lived. On August 21, 2015, appellant frightened respondent by sending a threatening text message warning him that a "storm was coming." On September 27, 2015, appellant stated that respondent could not hide and that part of him wanted to kick down respondent's door and say "I'm here motherf---er!" The next day, September 28, 2015, appellant told K.D. he had people watching her while she stayed with respondent, and he made thinly veiled threats against respondent. Respondent testified at the October 19, 2015 hearing that he felt harassed and threatened as a result. This evidence supports the district court's finding that appellant made repeated, intrusive, or unwanted acts and words.

**B.      Objectively unreasonable conduct or intent on the part of the harasser**

Appellant next argues that the evidence is insufficient to show he intended to harass respondent because appellant's words were a product of his emotional upheaval upon learning of his wife's relationship with respondent, not an expression of his intent to harm or harass respondent.  Appellant also argues that the threatening text message from August 21, 2015, did not support the issuance of the HRO because respondent did not know to whom the mobile-phone number belonged.

The district court found that respondent intended to cause a substantial adverse effect on the safety, security, or privacy of respondent.  Again, the district court based this finding on the July, 30, 2015 recording, as well as the recordings from September 27 and 28, 2015, which were made long after appellant discovered K.D.'s relationship with respondent.  The district court found that although respondent was not a party to the conversations with K.D., the comments "were clearly intended to be and were conveyed to respondent given the romantic relationship."  The district court also found that the nature of the threats, including comments such as "I will find him," and threats to run respondent over, established that the statements were "clearly intended to be intrusive."

"Because intent is a state of mind, it is generally determined by inferences drawn from the person's words or actions in light of all the surrounding circumstances."  *State v. Bock*, 490 N.W.2d 116, 120 (Minn. App. 1992).  Here, the district court based its finding of intent on the comments themselves and the surrounding circumstances.  Given the nature and number of the threats, it was reasonable for the district court to assume that appellant knew that his statements would be conveyed to respondent and that he intended

8

them to be conveyed. Therefore, the district court did not abuse its discretion in concluding that appellant, through his words, intended to have a substantial adverse effect on the safety, security, or privacy of respondent.

### C. Substantial adverse effect based on an objectively reasonable belief

Appellant also argues that there is insufficient evidence to conclude that his conduct had a substantial effect on respondent, and that there was no evidence to suggest what "objectively reasonable belief" respondent had regarding appellant's comments. We disagree. At the hearing, respondent testified that he "fully" felt he was being harassed and threatened. In his affidavit on the original HRO petition, respondent wrote, "This has changed my life. I now sleep with windows/doors shut . . . locked . . . leave on weekends with my kids." Respondent's belief that he was threatened was reasonable based on the nature of the threats. The district court did not abuse its direction in finding that appellant's comments were "clearly threatening in nature, and they are clearly invasive of [respondent]'s security and privacy."

On this record, we conclude that the district court did not abuse its discretion by issuing the HRO because "there are reasonable grounds to believe that the respondent . . . engaged in harassment." Minn. Stat. § 609.748, subd. 5(b)(3).

### IV.

Finally, appellant argues that the district court erred by naming respondent's children as victims in the HRO. Under the harassment statute, "The parent . . . of a minor who is a victim of harassment may seek a restraining order from the district court on behalf of the minor." Minn. Stat. § 609.748, subd. 2 (2014).

9

The district court found that "the nature of the threats also support the reasonable need to include protection for [respondent]'s minor children in this [HRO]." But, "reasonable need" based on the nature of the threats is not the standard. Whether the children are also victims of harassment is the standard. *Id*.

Because, there is nothing in the record showing respondent's minor children were victims of appellant's harassment or in need of protection, the district court abused its discretion by including the children in the HRO order. Therefore, we reverse that part of the HRO regarding respondent's children, and remand for proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**