STATE OF MINNESOTA

IN SUPREME COURT

A15-1666

Tax Court                                                                      Dietzen, J.

County of Aitkin, et al.,

                        Relators,

vs.                                                          Filed: August 17, 2016
                                                           Office of Appellate Courts
Blandin Paper Company,

                        Respondent.

_____

Jay T. Squires, Rupp Anderson Squires & Waldspurger, PA, Minneapolis, Minnesota;

Michael J. Haig, Chief Assistant Itasca County Attorney, Grand Rapids, Minnesota;

James Ratz, Aitkin County Attorney, Aitkin, Minnesota; and

Nick D. Campanario, Assistant St. Louis County Attorney, Duluth, Minnesota, for relators.

Marc A. Al, Andrew P. Moratzka, Emma J. Fazio, Stoel Rives LLP, Minneapolis, Minnesota; and

Dennis L. O'Toole, Lano, O'Toole & Bengston, Ltd., Grand Rapids, Minnesota, for respondent.

Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota, for amici curiae Minnesota Association of Townships, Association of Minnesota Counties, Minnesota Association of Assessing Officers, and the Minnesota County Attorneys' Association.

1

_____

S Y L L A B U S

1. Appraisal evidence that uses the unit-rule method to determine the fair market value of real property is admissible in a property tax proceeding provided that the evidence has foundational reliability and the method used results in a determination of the fair market value of each parcel before the tax court in accordance with Minn. Stat. § 273.12 (2014). Because the record does not establish that the appraisal evidence offered by respondent satisfies these requirements, the tax court erred in admitting that evidence.

2. The tax court's conclusion that the Conservation Easement reduced the market value of the real property before the court is supported by the record.

Reversed and remanded for a new trial.

O P I N I O N

DIETZEN, Justice.

Blandin Paper Company ("Blandin") filed 156 property tax petitions to challenge the assessor's estimates of market value, for purposes of property tax assessments, for 4,680 parcels of land constituting roughly 187,000 acres of land located in Aitkin, Itasca, Koochiching, and St. Louis Counties ("the Counties") for the January 2, 2010, and January 2, 2011, valuation dates. Before trial, the Counties moved to exclude evidence Blandin offered regarding the unit-rule method for determining the market value of the property at issue, arguing that the method was not recognized under Minnesota law and should not be admitted into evidence. The tax court denied the Counties' motion, and the consolidated cases proceeded to trial. Over the objection of the Counties, the tax court determined that

2

the unit-rule method was admissible in property tax proceedings, adopted Blandin's appraisal values based on that method, and reduced the assessors' aggregate market value of the parcels for January 2, 2010, from $190,098,751 to $52,200,000; and for January 2, 2011, from $189,753,551 to $25,800,000. For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

Blandin Paper Company owns and operates a paper mill located in Grand Rapids, where it manufactures lightweight coated paper used in magazines and catalogues. To provide a continuous supply of fresh wood for its manufacturing operation, Blandin owns 4,680 parcels of timberland, located in Aitkin, Itasca, Koochiching, and St. Louis Counties. The consolidated cases involve the January 2, 2010, and January 2, 2011, tax assessments based on the market values of Blandin's timberland properties.

The parcels are distributed among 78 taxing districts in the four Counties, and range in size from one-half acre to more than 600 acres, for a total combined area of about 187,000 acres. The parcels vary with respect to physical attributes such as road access, pond or stream frontage, topography, upland or lowland composition, and the amount of timber on the parcel. Blandin has not sought to combine any of the parcels for property tax purposes. Some, but not all, of the parcels are contiguous, but all of the parcels are operated as a single economic unit—namely, a managed forest that supports the operation of Blandin's paper mill.

Blandin enrolled most of its forest property under Minnesota's Sustainable Forest Incentive Act (SFIA), Minn. Stat. ch. 290C (2014), for several years, including 2010 and

3

2011.[1] Under SFIA, the State makes annual payments to the owners of forest land in return for the owners' agreement to practice sustainable forest management of those lands. *See* Minn. Stat. §§ 290C.08, subd. 1, 290C.03. To enroll in SFIA, a property owner must agree that the forest land is not and will not be developed in a manner inconsistent with SFIA requirements. Minn. Stat. § 290C.04(a). Land must be enrolled in SFIA for a minimum of 8 years, and the property owner must certify compliance with SFIA requirements annually. Minn. Stat. §§ 290C.03(a)(4), 290C.05. Under SFIA, enrollees pay local ad valorem property taxes, and later receive payments from the State. In 2009, the State reduced the funding for SFIA by capping payments at $100,000 annually, later making that cap permanent. *See generally Meriweather Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 561-62 (Minn. App. 2012) (explaining the SFIA program and statutory changes). As a result of this legislation, Blandin's 2010 effective property tax rate after SFIA reimbursements went from -$.30 per acre to approximately $7.91 per acre.

On July 8, 2010, Blandin granted a Conservation Easement to the State of Minnesota for its forest land.[2] Blandin granted to the State a perpetual Conservation Easement in and to its forest land in exchange for $43,700,000. Blandin reserved the right to sell or transfer the forest land, but Blandin's successors were bound by the terms of the agreement.

---

[1]     Identifying the specific parcels of Blandin's forest property that were enrolled in SFIA in any given year is not material to the issues before us in this appeal.

[2]     The Conservation Easement defines "protected property" to include the tax parcels that are the subject of this proceeding. For consistency, we use the term "forest land" to refer to the protected property that is subject to the Conservation Easement.

4

Finally, the easement required Blandin's forest land to remain under unified ownership; it could not be divided for sale, lease, mortgage, or license in any other form.[3]

In 2010 and 2011, the County Assessors in Itasca, St. Louis, Aitkin, and Koochiching Counties followed the statutory procedures for valuing and assessing each of the parcels that is the subject of this appeal. *See* Minn. Stat. §§ 273.11, .12 (2014). According to the County Assessors, the aggregate value of Blandin's parcels totaled $190,098,751 for the 2010 assessment, and $189,753,551 for the 2011 assessment. Blandin subsequently filed 156 petitions challenging those valuations. These petitions alleged (1) that the assessors' cumulative estimated fair market value for the parcels exceeded the actual market value of the single economic unit represented by Blandin's forest land; and (2) that Blandin's parcels were unequally assessed as compared with other properties. The tax court consolidated the petitions for trial.

Before trial, the parties exchanged appraisal reports that addressed the market value of the parcels as of January 1, 2010, and January 1, 2011. Both appraisers defined the subject property as Blandin's entire 187,000-acre, 4,680-parcel forest. Both appraisers determined the "highest and best use" of the property was sustainable timber production.[4] The Counties' appraiser, Maxwell Ramsland, used a model to estimate the value for each

---

[3]     There are several additional exceptions that do not apply to this appeal.

[4]     The Counties' expert described this use as "forest management activities," which we understand to be another name for sustainable timber production. As there is no dispute regarding the highest and best use of the property, we adopt the phrase used by Blandin's expert, "sustainable timber production," to describe the use.

5

individual parcel included in the subject property. Blandin's appraiser, Bret Vicary, estimated the market value of the fee simple interest in the subject property as a single economic unit based on his conclusion that the most likely purchaser of the property would be an institutional investor that would purchase the property as a single economic unit. Then, after considering comparable transactions involving forest land in other locations to determine an aggregate value for the property, Vicary used timberland inventory data (and in 2010, a factor to represent best-use potential value) to allocate a portion of the subject property's overall value to each of the four Counties, based on an average per-acre price. Vicary's appraisal method was referred to initially as a "larger-parcel rule" and later as the "unit-rule method."

The Counties filed a motion in limine to exclude Vicary's appraisal evidence, arguing that his unit-rule method is per se prohibited by Minnesota law, including by the tax uniformity requirement of Article X, Section 1 of the Minnesota Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The tax court denied this motion, and then, because Vicary's appraisals would be admitted at trial, denied the Counties' motion for summary judgment.

At trial, Vicary testified, consistent with his appraisal report, that the highest and best use of the subject property was sustainable timber production, that the subject property should be valued as a single economic unit, and that the resulting aggregate value should be allocated to each County. Vicary testified that the aggregate value of the subject property for the 2010 valuation date was $52,200,000 or $278 per acre, and for the 2011 valuation date was $25,800,000 or $138 per acre. The difference in value between the two

6

assessment dates, according to Vicary, was due in part to the Conservation Easement. Vicary also presented evidence that the value of standing timber is a factor in determining the value of the property on which the timber grows. Consequently, Vicary used timberland inventory data (and in 2010, a factor to represent value for potential non-timberland use in a small percentage of the total property) to allocate the aggregate value into separate values for each of the four Counties.[5]

Ramsland's report for the Counties stated that the aggregate value of the subject property was approximately $177,000,000 for the 2010 valuation date, and $129,000,000 for the 2011 date.[6] Ramsland considered comparable sales transactions, then relied upon mass appraisal techniques to determine the value of each of the 4,860 parcels based upon their individual characteristics, such as location, road access, and size.[7]

---

[5] For the 2010 appraisal, Vicary allocated $1,421,160 to Aitkin County ($292/acre), $1,190,230 to Koochiching County ($209/acre), $5,064,068 to St. Louis County ($229/acre), and $44,524,542 to Itasca County ($287/acre). For the 2011 appraisal, he allocated $679,329 to Aitkin County ($138/acre), $540,413 to Koochiching County ($119/acre), $2,895,960 to St. Louis County ($132/acre), and $21,684,298 to Itasca County ($140/acre).

After the close of Blandin's case-in-chief, the Counties moved to dismiss for failure to state a claim, renewing their argument that Vicary's unit-rule method was unlawful and failed to overcome the presumptive correctness of the assessors' estimated market value. The tax court denied the Counties' motion, noting that it had already ruled that Blandin's appraisal evidence was admissible when it denied the earlier motion in limine.

[6] Ramsland attributed a 25% reduction in value to the Conservation Easement for the 2011 valuation date.

[7] In his report, Ramsland acknowledged that Vicary's unit-rule method was a recognized practice in the timber industry, but was not recognized by Minnesota appraisers in the area of ad valorem property taxation.

7

Following trial, the tax court concluded that Blandin presented sufficient evidence to overcome the prima facie validity of the assessors' estimated market value of the property, and to determine a market value for each parcel. The tax court ordered further proceedings to determine whether extending Vicary's allocation method to compute a per-acre value for each of the affected 78 taxing districts (rather than merely the four affected counties) would materially increase the accuracy of the final market value determinations using Blandin's unit-rule method. The tax court directed Vicary to supplement his report by computing a per-acre value for 12 of the 78 affected taxing districts. After receiving the parties' submissions on this issue, the tax court held a further hearing to consider Vicary's supplemental report and computations.

On June 16, 2015, the tax court filed findings of fact, conclusions of law, and an order for judgment. The court concluded that the highest and best use of the property for both assessment dates was as a single economic unit for sustainable timber production. The court reasoned that the most probable purchaser of the subject property, an institutional investor such as a timber management organization or a timber real estate investment trust, would use the unit-rule method to value the property. Further, the court concluded that while Vicary's allocation of the aggregated value of the whole to each county according to the proportionate amount of gross timber value would materially misallocate value, the same process for allocating value at the tax district level would not do so. The court decided that the aggregated value should be allocated down to the 78 affected taxing districts by: "(1) determining an average per-acre value for each taxing district based upon

8

the distribution of gross timber value; and (2) multiplying that figure by the total number of acres lying within each taxing district."

Vicary's supplemental appraisal report, which the tax court accepted, expanded the allocation process beyond the county level to individual tax districts, using the 12 sample taxing districts the tax court identified to show how the process worked.[8] For the 2011 valuation date the tax court concluded that the Conservation Easement reduced the value of the property by $26,400,000. The court rejected the appraisal evidence presented by Ramsland, concluding that his analysis was flawed and "entitled to no weight whatsoever" because his appraisal was internally inconsistent, focused upon the wrong buyers, property, and uses, and did not use a traditional sales comparison approach. The tax court then ordered the Counties to recompute Blandin's tax liability based on the allocation decision.[9] The Counties appealed.[10]

---

[8]    For example, based upon timberland inventory data supplied by Blandin, Vicary allocated $5,064,068 of the total 2010 value ($52,200,000) to Saint Louis County, and computed an average of $229 per acre for land lying in that county.

[9]    The Counties moved for amended findings, conclusions, and a new trial, arguing that the tax court erred by: (1) denying their motion in limine; (2) excluding proposed evidence detailing the approach taken by the Counties to derive market values for each tax parcel; (3) excluding proposed evidence regarding the alleged lack of uniformity between similarly classed properties under Blandin's valuation method; and (4) precluding the Counties from presenting evidence regarding the effect of the Conservation Easement on property value. The tax court subsequently issued an order dated August 28, 2015, which, except for an amendment to finding 6, denied the Counties' motion.

[10]   The Counties did not appeal the tax court's decision to reject Ramsland's appraisal evidence.

I.

On appeal, the Counties first argue the tax court erred by concluding: (1) the unit-rule method could be used to determine the market value for individual parcels in a property tax proceeding; and (2) using the unit-rule method did not violate the tax uniformity provision of Article X, Section 1 of the Minnesota Constitution and the Equal Protection Clause of the U.S. Constitution.

We review a final order of the tax court to determine if the tax court lacked jurisdiction, the tax court's order is not justified by the evidence or in conformity with the law, or the tax court's order is affected by any other error of law. Minn. Stat. § 271.10, subd. 1 (2014). Specifically, we review the tax court's legal determinations de novo, and we review its factual findings under the "clearly erroneous" standard. *Cont'l Retail v. Cty. of Hennepin*, 801 N.W.2d 395, 398 (Minn. 2011). The tax court's decision is clearly erroneous if the decision is not reasonably supported by the evidence as a whole. *Lewis v. Cty. of Hennepin*, 623 N.W.2d 258, 261 (Minn. 2001). We do not defer, however, to the tax court's valuation determination when the tax court has clearly misvalued the property or has failed to explain its reasoning. *Nw. Nat'l Life Ins. Co. v. Cty. of Hennepin*, 572 N.W.2d 51, 52 (Minn. 1997).

Blandin argues that our review of the tax court's decisions regarding the admission of evidence is deferential. We agree. *See Cont'l Retail*, 801 N.W.2d at 399. But the question we must resolve here is whether the tax court correctly applied Minnesota law in making its evidentiary decisions. This is a question of law that we review de novo. *See Marlow Timberland, LLC v. Cty. of Lake*, 800 N.W.2d 637, 640 (Minn. 2011).

The Counties argue that the Legislature has not expressly authorized the use of the unit-rule method of valuation in a property tax proceeding, and therefore the tax court erred in using this method to value Blandin's forest land. To determine whether Blandin's proposed unit-rule method is allowed by Minnesota law, we first review the relevant law, then describe Blandin's valuation method, and finally apply the legal principles to the Counties' arguments on appeal.

A.

All property "shall be valued at its market value." Minn. Stat. § 273.11, subd. 1 (2014). Market value is defined as "the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at a private sale or an auction sale . . . ." Minn. Stat. § 272.03, subd. 8 (2014). In determining market value for taxation, an assessor must "consider and give due weight to every element and factor affecting the market value" as of January 2 of the year preceding the year for which the taxes are payable. Minn. Stat. §§ 273.01, .12 (2014).

The market value of real estate is determined according to the property's highest and best use. *Am. Express Fin. Advisors, Inc. v. Cty. of Carver*, 573 N.W.2d 651, 659 (Minn. 1998). The highest and best use of a property is the one that is physically possible, legally permissible, financially feasible, and maximally productive. Appraisal Institute, *Dictionary of Real Estate Appraisal* 135 (4th ed. 2002). Moreover, "[w]henever a market value opinion is developed, highest and best use analysis is necessary." *Berry & Co. v. Cty. of Hennepin*, 806 N.W.2d 31, 34 (Minn. 2011).

11

Evidence of the market value of real property is often introduced through appraisal testimony, and the tax court enjoys broad discretion to admit or exclude such evidence. *Cont'l Retail*, 801 N.W.2d at 399; *see* Minn. Stat. § 271.06, subd. 7 (2014) (stating the rules of evidence apply to tax court proceedings "where practicable"). The testimony of an appraisal expert is admissible provided that the witness is qualified, the opinion has foundational reliability, and the testimony is helpful to the factfinder. *Cont'l Retail*, 801 N.W.2d at 399; Minn. R. Evid. 702. But the proponent of a novel theory must establish that the proffered evidence is generally accepted in the relevant field. *See Doe v. Archdiocese of St. Paul & Minneapolis*, 817 N.W.2d 150, 164-65 (Minn. 2012).

B.

During the tax court proceedings, the description of Blandin's proposed appraisal method evolved from the "larger-parcel rule" to the "unitary-valuation method."[11] The tax court found that the unitary-valuation method, or unit-rule method, is a generally accepted appraisal practice.[12]

The two valuation methods that Blandin introduced in this proceeding, the larger-parcel rule and the unit-rule method, are separate and distinct. The larger-parcel rule may

---

[11]     *Compare Blandin Paper Co. v. Cty. of Aitkin*, No. 01-CV-11-375 et al., Order (Minn. T.C. filed May 23, 2013) (discussing the larger-parcel rule of appraisal proposed by Blandin's appraiser) *with Blandin Paper Co. v. Cty. of Aitkin*, No. 01-CV-11-375 et al., Order at 2, 6-13 (Minn. T.C. filed Jan. 29, 2014) (discussing the unit-rule method of appraisal).

[12]     *Blandin Paper Co. v. Cty. of Aitkin*, No. 01-CV-11-375 et al., Order at 2 (Minn. T.C. filed Aug. 28, 2015).

be considered in eminent domain proceedings if the proponent demonstrates that there is a unity of use such that the use to which the noncontiguous tracts of land are applied is so connected that the taking from one tract of land in fact damages the other tract of land, Minn. Stat. § 117.086, subd. 1 (2014) (stating "[i]n all eminent domain proceedings . . . noncontiguous tracts of land may be considered as a unit for the purpose of the assessment of the damages for a taking from only one of such tracts, provided that the use to which the tracts are applied is so connected, that the taking from one in fact damages the other."). *See, e.g.*, *City of Crookston v. Erickson*, 244 Minn. 321, 327, 69 N.W.2d 909, 914 (1955) (adopting a rule that "where a part of an owner's land is taken for a public improvement . . . and the part taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put, the owner [can] recover the full damage to his remaining property") (internal quotation marks omitted); *see also Larger Parcel*, *Black's Law Dictionary* (10th ed. 2014); Appraisal Institute, *Dictionary of Real Estate Appraisal* 160 (4th ed. 2002). Under the larger-parcel rule, the owner is entitled to damages from the severance as well as for the value of the parcel taken. *Larger Parcel*, *Black's Law Dictionary* (10th ed. 2014). The larger-parcel rule is not applicable unless the owner establishes a unity of ownership and unity of use. *See* Minn. Stat. § 117.086, subd. 1; *City of Crookston,* 244 Minn. at 327, 69 N.W.2d at 914. Most jurisdictions also require contiguity of the combined parcels unless strong evidence of unity of use is shown. *Larger Parcel*, *Black's Law Dictionary* (10th ed. 2014). Minnesota Statutes ch. 278 (2014), however, does not adopt the larger-parcel rule in property tax proceedings.

13

The unit-rule method is used to value the entirety of a business, including all property, as a going concern when the business enterprise is located in more than one jurisdiction. The unit rule is defined as:

> [A] method that values the property within a particular jurisdiction based on the fair share of the value of an operating enterprise of which the property is an integral part. The unit value concept values all the property as a going concern without geographical or functional division of the whole and includes tangible and intangible assets.

Appraisal Institute, *Dictionary of Real Estate Appraisal* 239 (6th ed. 2015).[13]

The Minnesota Legislature has adopted a unit-rule method to value the property of railroads, utilities, and pipelines for tax purposes. Minnesota Statutes § 270.84 (2014) directs the Commissioner of Revenue to annually "make a determination of the fair market value of the operating property of every railroad company doing business in this state." *Id.* To do so, the Commissioner "employ[s] generally accepted appraisal principles and practices which may include the unit method of determining value." *Id.* Once valued, the Commissioner apportions the value to the responsible taxing districts. Minn. Stat. § 270.86, subd. 1 (2014). Similarly, there are specific statutes that set forth a valuation process for utilities and pipeline companies that use personal property in the State to deliver or transport water, gas, or electricity. *See* Minn. Stat. §§ 273.37-.371 (2014). Other than

---

[13]     Historically, unit valuation was devised to address the difficult task of valuing a business as a going concern when the property of the business is located in more than one taxing district. James C. Bonbright, 2 *The Valuation of Property* 633 (1937). Courts generally disfavored such valuations, however, because of inaccuracies in the assessment method and inequities in how it was administered at the local level. *See, e.g.*, *People ex rel. Delaware, Lackawanna & W. R.R. Co. v. Clapp*, 46 N.E. 842, 844 (N.Y. 1897) (stating that unit valuation "is misleading and impossible of application with any approach to justice or accuracy").

for these regulated industries, the Legislature has not expressly adopted a state-wide valuation method for multiple parcels held by one owner across multiple taxing districts.

C.

The Counties argue, in effect, that the name of these valuation theories is irrelevant. The only valuation method authorized by the Legislature for a property owner such as Blandin, according to the Counties, is the market value of each individual parcel. Thus, we turn next to the relevant property tax statutes. The property tax statutes clearly state that property taxes are assessed against individual tax parcels on the basis of market value. *See* Minn. Stat. § 273.11, subd. 1 (stating "all property shall be valued at its market value" and the assessor "shall value each article or description of property by itself"); *see also* Minn. Stat. § 273.01 ("All real property subject to taxation shall be listed and . . .each parcel shall be reappraised at maximum intervals of five years."); Minn. Stat. § 273.03 ("The auditor shall make . . complete lists of all lands or lots subject to taxation, showing the names of the owners, if known; and, if unknown, so stated opposite each tract or lot, the number of acres, and the lots or parts of lots or blocks, included in each description of property."); Minn. Stat. § 273.08 (2014) ("The assessor shall actually view, and determine the market value of each tract or lot of real property listed for taxation . . . and shall enter the value opposite each description."). These statutes provide a limited mechanism for the property owner to combine separate tax parcels. Minnesota Statutes § 272.46 (2014) provides that the auditor may, upon written application of any person, combine legal descriptions of *contiguous* parcels for property tax purposes when the applicant holds title as property owner. But the auditor is not required to combine legal descriptions over

15

section lines when the parcels are located in different school districts or taxing districts. *Id.* Blandin did not seek to combine any of the 4,680 parcels in question.

We have not previously resolved whether the unit-rule method and resulting allocation of the aggregate value can be used in Minnesota property tax proceedings.[14] In *Theobald v. County of Lake*, 712 N.W.2d 180 (Minn. 2006), we refused to allow a taxpayer to combine multiple parcels because, we concluded, the assessor's duty was "to fairly assess parcels of property as they are subdivided by the county auditor for tax purposes," and not to combine those parcels unless a proper motion to combine was made. *Id.* at 183 (citing Minn. Stat. § 273.08). In *Marlow Timberland, LLC v. County of Lake*, 800 N.W.2d

---

[14]    Blandin argues that we have "implicitly" endorsed or applied the unit-rule method in other cases. We disagree. None of the cases that Blandin cites involved multiple contiguous and non-contiguous parcels stretching across dozens of taxing districts. *See 444 Lafayette, LLC v. Cty. of Ramsey*, 830 N.W.2d 25, 27 (Minn. 2013) (describing the "subject property" and "three adjacent properties" in one county); *Federated Retail Holdings, Inc. v. Cty. of Ramsey*, 820 N.W.2d 553, 555 (Minn. 2012) (describing the county's assessment of the fair market value of a tax parcel and a leasehold interest "in the parcel adjacent to the tax parcel"); *Equitable Life Assurance Soc'y of the U.S. v. Cty. of Ramsey*, 530 N.W.2d 544, 547 (Minn. 1995) (describing the "estimated market values of two contiguous parcels of real property"); *Renneke v. Cty. of Brown*, 255 Minn. 244, 244-45, 97 N.W.2d 377, 378 (1959) (describing two "adjoining" parcels "located in the downtown district of Sleepy Eye").

The decisions the tax court relied on are also inapposite. *See Bushaway Corp. v. Cty. of Hennepin*, No. TC-13619, 1993 WL 190855, at *1 (Minn. T.C. June 4, 1993) (describing three parcels located in one taxing district, with one parcel "surrounded by" another parcel); *Barry v. Cty. of Hennepin*, No. TC-5561, 1988 WL 70689 (Minn. T.C. June 21, 1988) (valuing two adjacent parcels comprising a three-building apartment complex as a single unit and subsequently allocating value to each parcel); *United Nat'l Corp. v. Cty. of Hennepin*, No. 1482, 1983 WL 1026 (Minn. T.C. Apr. 21, 1983) (valuing three parcels comprising a shopping center as a single unit). These cases stand for the unremarkable proposition that tax parcels may be combined for property tax purposes. None of these cases address whether the unit-rule method is properly applied to value a collection of contiguous and non-contiguous parcels that stretches across multiple taxing districts in four counties.

16

637 (Minn. 2011), we considered whether the tax court properly dismissed a tax petition that challenged the property taxes for 744 parcels located in four townships and two unorganized territories in one county on the ground that the properties were over-assessed. *Id*. at 639 (stating the taxpayer "purchased nearly 40,000 acres of real property located in Lake County"). Although we reversed the tax court's dismissal we did not address the availability of the unit-rule method.

## D.

With this background in mind, we return to the question of whether the unit-rule method may be used by the tax court in a property tax proceeding. The Counties urge us to conclude the unit-rule method is generally unavailable in a property tax proceeding, and specifically that the property tax statutes require valuation on a parcel-by-parcel basis. Blandin counters that real property must be valued based upon its market value and that the unit-rule method is a reliable means by which to determine market value.

The tax court, agreeing with Blandin, rejected the Counties' arguments. The tax court reasoned that the statutes in question are administrative, not substantive, and have no bearing on market value in this situation. We agree with the tax court that the applicable standard pursuant to section 273.11 is market value, but we disagree that the statutory directive for a parcel-by-parcel valuation can be ignored. Indeed, the property tax statutes clearly provide that each tax parcel must be valued. *See* Minn. Stat. §§ 273.03, .08, .11 subd. 1, 273.12; *see also* Minn. Stat. § 272.193 (2014). Such a determination is not merely

17

administrative. Rather, a parcel-by-parcel determination is fundamental to the property tax scheme established by the Legislature.[15]

On the other hand, the property tax statutes do not prohibit the use of the unit-rule method when it has foundational reliability and results in a determination of the fair market value of the subject properties in accordance with section 273.12. In fact, the property tax statutes do not directly address the unit-rule method at all. Instead, the focus of the statutes is on market value. The tax court concluded that the unit-rule method, which requires that the owner or proponent of the method establish that the combined parcels operate as a single economic unit, is generally accepted by the appraisal community.

We agree that the unit-rule method is generally accepted in the appraisal community as a method to value an operating enterprise located in more than one jurisdiction in which property is an integral part. We recognize that there is no generally accepted criteria for the use of the unit rule in a property tax proceeding. But existing appraisal literature and the larger-parcel rule provide guidance. *See* Appraisal Institute, *Dictionary of Real Estate Appraisal* 160 (4th ed. 2002); *Larger Parcel*, *Black's Law Dictionary* (10th ed. 2014). Based upon relevant appraisal literature, we conclude the unit-rule method is not available unless the proponent establishes a unity of ownership, unity of use, and contiguity of the combined parcel. Contiguity of the land, however, may not be required if there is strong

---

[15] We acknowledge that such a parcel-by-parcel determination in the case of 4,680 parcels may be tedious, but that is a determination required by the Legislature, not by this court. *See, e.g.*, *Under the Rainbow Child Care Ctr., Inc. v. Cty. of Goodhue*, 741 N.W.2d 880, 890 (Minn. 2007) (recognizing that "tax policy choices are appropriately left to the political branches"). We also observe that Blandin had the right to apply to combine contiguous parcels within tax jurisdictions as provided for by Minn. Stat. § 272.46.

evidence of unity of use. *Larger Parcel*, *Black's Law Dictionary* (10th ed. 2014). Additionally, the proponent must show that the method results in a determination of the fair market value of each parcel before the tax court in accordance with Minn. Stat. § 273.12.

We conclude that appraisal evidence that uses the unit-rule method to determine the fair market value of real property is not prohibited in a property tax proceeding provided that the evidence has foundational reliability and the method used results in a determination of the fair market value of each parcel before the tax court in accordance with Minn. Stat. § 273.12. We defer to the tax court on matters clearly within its expertise, including when and under what circumstances the unit-rule method should be applied in a particular case. But the method must have foundational reliability and must be based upon the market value characteristics of each property. Moreover, the unit-rule method is not available unless the property owner establishes a unity of ownership, unity of use, and contiguity of the combined parcel, although contiguity of the land may not be required if there is strong evidence of unity of use. When the highest and best use of the real property before the tax court is as combined parcels that operate as a single economic unit, that unity of use is directly relevant to the market value of the property. Minn. Stat. § 273.12.[16]

---

[16]    The Counties argue that a unit-rule method cannot be used because Blandin failed to bring a motion to combine its properties under Minn. Stat. § 272.46. We disagree. Blandin gave notice that it intended to rely on the unit-rule method, and the Counties agreed that the highest and best use of the properties was as a single economic unit. The cases cited by the Counties are not relevant. *See 444 Lafayette, LLC*, 830 N.W.2d 25 (involving the valuation of real property that was benefitted by a parking easement, but not combining parcels across section lines); *Federated Retail Holdings, Inc.*, 820 N.W.2d 553 (concerning

E.

We next examine whether Blandin's unit-rule method, as presented in this case, has foundational reliability. We observe that Blandin's unit-rule method is significantly different from the larger-parcel rule and unit-rule method that are generally accepted in the appraisal community. Blandin's method consists of two steps: (1) determining an aggregated value of all properties that operate as a single economic unit; and then (2) the allocation of the aggregated value into value determinations for each taxing district based upon the presence of standing timber. We see three serious problems with Blandin's approach.

First, Blandin did not establish that all of the parcels are contiguous. The record reflects that roughly 80% of the parcels appear to be contiguous. But the remaining parcels are located well outside the area of contiguity and in some cases are a considerable distance from Blandin's paper mill. The tax court failed to explain why the lack of contiguity did not detract from the use of the unit-rule method for these parcels, or why the remoteness of certain parcels to the paper mill did not affect their highest and best use or their market

---

the valuation of real property that had a leasehold interest in adjoining property that "ran with the land"). These cases stand for the proposition that an adjoining easement and a leasehold interest must be considered when assessing market value, but neither stands for the proposition that multiple parcels must be combined to determine an aggregate value for property tax purposes. The other cases involving properties that were combined by agreement for tax purposes are also inapposite. *See Equitable Life Assurance Soc'y of U.S.*, 530 N.W.2d at 547-48 (affirming the tax court's valuation of a combination of two tax parcels together, with no allocation between the parcels); *Renneke*, 255 Minn. 244, 97 N.W.2d 377 (affirming the valuation of two parcels as one unit for tax purposes).

20

value. Any non-contiguous parcels should be excluded from the single economic unit unless Blandin establishes unity of use.

Second, the unit-rule method offered by Blandin does not have a defined allocation approach. *See, e.g.*, *Fla. E. Coast Ry. Co. v. Dep't of Revenue*, 620 So.2d 1051, 1055-57 (Fla. Dist. Ct. App. 1993) (applying the unit-rule method of valuation to determine ad valorem taxes on a railroad company); *see also Comcast Corp. v. Dep't of Revenue*, 337 P.3d 768, 772-73 (Or. 2014) (discussing the history of the unit rule and central assessment). The tax court did not cite, and we are unable to find, an allocation methodology that is generally accepted in the appraisal community. Minnesota's property tax statutes require that each parcel be valued based upon every factor and element that affects market value. Minn. Stat. § 273.11, subd. 1; Minn. Stat. § 273.12. The risk of inaccuracies in Blandin's allocation method for 4,680 parcels, which relied on standing timber values, seems apparent to us when the widespread distribution of the parcels is considered along with the attributes beyond standing timber that are relevant to determining fair market value.

Third, the allocation method adopted by the tax court did not comply with the requirement of the property tax statutes that an individualized determination of market value be made for each tax parcel. Specifically, the tax court erroneously concluded that it was appropriate to calculate the average per-acre value of the standing timber for each taxing district, and then multiply that figure by the total number of acres lying within each taxing district. This top-down approach (allocation of the whole value to the 78 taxing districts) does not separately examine the unique characteristics of each parcel. The myopic view that market value may be determined by the amount of standing timber on

the parcels in 15% of the taxing districts is contrary to Minn. Stat. § 273.12. Moreover, the court's determination that the highest and best use of the aggregated properties is timber production is incomplete. The unit-rule method requires that there be a unity of highest and best use. Thus, each parcel must have the same highest and best use. The court failed to determine whether any parcel had a highest and best use other than timber production.[17] Logically, any parcel in which timber production is not the highest and best use must be removed from the unit-rule method analysis. Because the value determinations upon which the tax court relied were based on gross timber averages and a single highest and best use for the aggregated properties, the tax court's determinations are contrary to Minn. Stat. § 273.12, which requires market value to be based upon the individual characteristics of each parcel.

In sum, we conclude that appraisal evidence that uses the unit-rule method to determine the fair market value of real property may be admissible in a property tax proceeding, provided that the evidence has foundational reliability and the method used results in a determination of the fair market value of each parcel before the tax court in accordance with Minn. Stat. § 273.12. Because the record does not establish that the

---

[17] While Vicary did consider other attributes for some of the parcels such as potential for recreational use, he did not indicate whether any parcel has a highest and best use other than timber production.

appraisal evidence offered by Blandin satisfies these requirements, however, the tax court erred in admitting that evidence.[18]

## II.

The Counties next argue that the tax court erred in reducing the January 2011 valuation due to the presence of the Conservation Easement. According to the Counties: (1) the reduction in value is contrary to Minnesota law requiring that the fee simple interest unencumbered by an easement be valued for property-tax purposes; and (2) the applicable version of Minn. Stat. § 273.117 grants an assessor the discretion to ignore the easement in valuing property, and the record does not support the tax court's reduction in value. We will address each argument in turn.

## A.

Minnesota Statutes § 272.03, subd. 1(a), states that real property "includes . . . all rights and privileges belonging to or appertaining to the land." *See also Federated Retail Holdings, Inc. v. Cty. of Ramsey*, 820 N.W.2d 553, 560 (Minn. 2012) (discussing covenants that run with the land). Generally, an easement is an interest in real property consisting of

---

[18] The Counties argue that application of the unit-rule method violates the tax uniformity requirement in Article X, Section 1 of the Minnesota Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. According to the Counties, taxing a portfolio of commonly owned properties based on an allocated or contributory value, but taxing individually owned properties based on market value, violates the Minnesota and United States Constitutions. The Counties rely on *Hamm v. State*, 255 Minn. 64, 95 N.W.2d 649 (1959), and *Orchard Gardens Country Club, Inc. v. Commissioner of Revenue*, 294 N.W.2d 701 (Minn. 1980), to support their argument. Because we conclude that market value is an element of the unit-rule method, and more importantly, because we remand to the tax court for a new trial on all issues, we decline to address the Counties' constitutional challenge.

the right to use or control the land, or an area above or below it, for a specific limited purpose. *Easement*, *Black's Law Dictionary* (10th ed. 2014); Appraisal Institute, *The Appraisal of Real Estate* 75 (14th ed. 2013). A conservation easement typically restricts the future land use of the property to preservation, conservation, wildlife habitat, or some combination of those uses, although farming, timber harvesting, or other rural uses may be permitted to continue. Appraisal Institute, *The Appraisal of Real Estate* 75 (14th ed. 2013). An easement may or may not reduce the fair market value of the subject property depending on the facts and circumstances. *See Alvin v. Johnson*, 241 Minn. 257, 262, 63 N.W.2d 22, 25 (1954) (stating that "[a]ppurtenant easements are factors definitely affecting values").

The Counties rely on *TMG Life Ins. Co. v. Cty. of Goodhue*, 540 N.W.2d 848 (Minn. 1995), to argue that the market value of the property is its value on a fee-simple basis. In *TMG Life*, we considered whether property before the tax court must be valued on the lesser leased-fee or a fee-simple interest. *Id.* at 850-53. The petitioner had an ownership interest in the property. The dispute centered on whether market value contemplates comparable market rents, or the actual leased rent at the time of the assessment. *Id.* at 853. We concluded that the county assessor was correct to use the higher market rent at a comparable store to estimate the market rate. *Id.* We reasoned that when determining the market value of property under Minn. Stat. ch. 278, the property is valued on a fee-simple basis, not a leased-fee basis. *Id.* But *TMG Life* did not address whether a conservation easement that burdens the subject property should be considered in determining its market value. Consequently, *TMG Life* is inapposite.

Here, the Conservation Easement burdens the subject properties. Specifically, the Conservation Easement imposes substantive restrictions upon the use of Blandin's properties, restricting their use and limiting Blandin's ability to sell or transfer the properties. Notably, both Vicary and Ramsland recognized that these restrictions negatively affected the subject properties' value.

B.

The Counties next argue that the applicable version of Minn. Stat. § 273.117 gives the county assessor the authority to ignore the presence of a conservation easement on a property, and that a reduction in value is not supported by the record.

The Counties' argument is based to some extent on recent amendments to the statute that governs valuation of conservation easements for property tax purposes. The statute, Minn. Stat. § 273.117, was enacted in 1981, amended in 2008, and amended again in 2013. The 1981 version of the statute provided that "[r]eal property which is subject to a conservation restriction or easement shall be entitled to reduced valuation under this section." Minn. Stat. § 273.117 (1982).

The 2008 version of section 273.117 is applicable to the property tax valuations at issue in this case. It provides that:

> The value of real property which is subject to a conservation restriction or easement may be adjusted by the assessor if:
>
> (a) the restriction or easement is for a conservation purpose as defined in section 84.64, subdivision 2, and is recorded on the property;
> (b) the property is being used in accordance with the terms of the conservation restriction or easement.

25

Minn. Stat. § 273.117 (2008). This version of section 273.117 replaced the requirement that a conservation easement be factored into a property's value with language giving the assessor the discretion to account for a conservation easement on a case-by-case basis. *Id.* In 2013, the statute was once again amended, and its current form prohibits an assessor from lowering the value of real property due to the presence of a conservation easement. Minn. Stat. § 273.117 (2014).

We conclude that when an assessor exercises his or her discretion under the 2008 version of section 273.117 and declines to adjust for the presence of a conservation easement, that decision is reviewable by the tax court in accordance with Minn. Stat. § 278.01 (2014). Specifically, an assessor's valuation is prima facie valid. Minn. Stat. § 271.06, subd. 6 (2014) ("[T]he order of the commissioner or the appropriate unit of government in every case shall be prima facie valid."); Minn. Stat. § 272.06 (2014) (providing that the assessment is "presumed to be legal until the contrary is affirmatively shown"). When a taxpayer challenges a property assessment, "there is a prima facie presumption that the assessor's valuation is proper, and the taxpayer has the burden of proving that the assessment is excessive." *S. Minn. Beet Sugar Coop. v. Cty. of Renville*, 737 N.W.2d 545, 558 (Minn. 2007) (quoting *In re McCannel*, 301 N.W.2d 910, 923 (Minn. 1980)).

In sum, the tax court's conclusion that the Conservation Easement reduced the market value of the parcels is supported by the record. However, because we remand the case for a new trial on all issues, the tax court will have to decide what impact, if any, the

26

Conservation Easement has on the market value of the parcels under the valuation analysis applied on remand.

III.

In sum, we conclude that appraisal evidence that uses the unit-rule method to determine the fair market value of real property may be admissible in a property tax proceeding, provided that the evidence has foundational reliability and the method used results in a determination of the fair market value of each parcel before the tax court in accordance with Minn. Stat. § 273.12. The elements of the unit-rule method are unity of ownership, unity of highest and best use, and contiguity of the land. Contiguity of the land, however, may not be required if unity of use is established. Because the record does not establish that the appraisal evidence offered by respondent satisfies these requirements, the tax court erred in admitting that evidence.

We acknowledge that this complicated proceeding rests on a voluminous record. The trial before the tax court was largely occupied with resolving the difficult legal question of whether the unit-rule method of valuation is available in a property tax proceeding. We commend the tax court for conducting a fair trial that resulted in thorough orders that clearly presented this difficult issue for our review. Although a considerable record already exists, having concluded that the unit-rule method is available and limited as set forth in this opinion, we believe that both parties should be given the opportunity to present evidence in favor of their respective positions. Accordingly, we remand to the tax court for a new trial on all issues.

Reversed and remanded.