LILLEHAUG, Justice.
This case requires that we decide whether the tax court must follow an administrative *19 rule on how utilities, including pipelines, should be valued for tax purposes. We conclude that the rule, including its valuation formula, is binding on the tax court.
FACTS
This case arises from challenges filed by Enbridge Energy, LP ("EELP") to the Commissioner of Revenue's valuation of EELP's petroleum pipeline system for property taxes payable in 2013, 2014, and 2015. The tax court consolidated these challenges for trial in the spring of 2015. Then, the tax court stayed the consolidated proceedings pending the final resolution of Minnesota Energy Resources Corp. v. Commissioner of Revenue ("MERC "), 886 N.W.2d 786 (Minn. 2016). MERC considered, in part, the applicability of administrative rules, promulgated by the Commissioner, to valuation challenges in the tax court.
Our decision in MERC was filed on November 9, 2016. The tax court then lifted the stay in this case, discovery was conducted in the consolidated proceedings, and a trial was held in October 2017. The tax court, on May 15, 2018, filed its decision, in which it (1) concluded that the Commissioner had overvalued EELP's pipeline system for all three years, (2) issued a new valuation for all three years, and (3) ordered the Commissioner and EELP to "discuss procedures for addressing the method by which the court should allocate" the pipeline system's unit value between Minnesota and other states.
In determining the value of EELP's pipeline system for the three years at issue, the tax court rejected both the sales-comparison approach and the cost approach. The cost approach is explicitly used in Minnesota Rule 8100 ("Rule 8100" or "the Rule"), an administrative rule adopted by the Commissioner after our decision in Independent School District No. 99 v. Commissioner of Taxation , 297 Minn. 378, 211 N.W.2d 886 (1973), to guide the valuation of utilities, including pipeline systems. But the tax court concluded that it was not bound by Rule 8100 in determining market value, because the formula in the Rule applied only to the Commissioner during her valuation of the pipeline system.
After rejecting the cost approach, the tax court applied the income approach to valuation, setting the unit value of the pipeline system for the three years at issue. The court declined, however, "to allocate [the] system unit value between Minnesota and other states," because the court (1) was not limited to the formula the Commissioner used under Rule 8100 and (2) had not utilized the cost approach, which therefore rendered the allocation formula in Rule 8100 unworkable. The tax court therefore "invited the parties to submit proposals for allocating" the system unit value.
The Commissioner objected to the tax court's conclusion that it is not bound by Rule 8100 when valuing a pipeline system and in allocating system unit value, and filed a timely petition for discretionary review. See Minn. R. Civ. App. P. 105.01. We granted her petition.
ANALYSIS
The question presented in this appeal is whether the tax court erred when it concluded that it is not bound by Rule 8100 when valuing a pipeline system. The tax court is an agency in the executive branch, which, subject to our review, is granted "sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state ...." Minn. Stat. § 271.01, subd. 5 (2018). The tax court must "hear, consider, and determine ...
*20 every appeal de novo." Minn. Stat. § 271.06, subd. 6 (2018) ; see also Conga Corp. v. Comm'r of Revenue , 868 N.W.2d 41, 47-48 (Minn. 2015).
Our review of tax court decisions is well-defined; we "determine whether the tax court lacked subject matter jurisdiction, whether the tax court's decision is supported by evidence in the record, and whether the tax court made an error of law." Hohmann v. Comm'r of Revenue , 781 N.W.2d 156, 157 (Minn. 2010). "When questions of law arise, [we] ha[ve] plenary powers to review the tax court's decision." Nw. Nat'l Life Ins. Co. v. Cty. of Hennepin , 572 N.W.2d 51, 52 (Minn. 1997) (citing Nagaraja v. Comm'r of Revenue , 352 N.W.2d 373, 376 (Minn. 1984) ). Review of the tax court's conclusion that it is not bound by Rule 8100 is a question of law that we review de novo. MERC , 886 N.W.2d at 799.
The property-tax system rests on the principle that all property must be "valued at its market value." Minn. Stat. § 273.11, subd. 1 (2018). Each item of personal or real property must be separately and independently valued. Id. ("[T]he assessor shall value each article or description of property by itself."). Generally, property tax is assessed by local taxing authorities. See Minn. Stat. §§ 273.17, subd. 1, .062 (2018).
The Legislature has created several exceptions to this arrangement of local valuation, one of which is the valuation of pipeline systems. The Commissioner must annually list and assess "[t]he personal property, consisting of the pipeline system of mains, pipes, and equipment attached thereto, of pipeline companies and others engaged in the operations or business of transporting products by pipelines." Minn. Stat. § 273.33, subd. 2 (2018). The Commissioner then must provide this list and assessment to the various taxing jurisdictions in which the property "is usually kept"-that is, through which the pipeline runs. Id. , subd. 1.
Instead of providing an individualized valuation, the Commissioner assesses pipeline property as a whole, using the unit-rule method. Cty. of Aitkin v. Blandin Paper Co. , 883 N.W.2d 803, 812 (Minn. 2016) ("The Minnesota Legislature has adopted a unit-rule method to value the property of railroads, utilities, and pipelines for tax purposes."). The unit-rule method "value[s] the entirety of a business, including all property, as a going concern when the business enterprise is located in more than one jurisdiction." Id. at 811.
The Legislature has given the Commissioner considerable authority to make administrative rules. "The [C]ommissioner shall, from time to time, make, publish, and distribute rules for the administration and enforcement of state revenue laws," including the pipeline valuation statute, and "[those] rules have the force of law." Minn. Stat. § 270C.06 (2018) ; see also State ex rel. Indep. Sch. Dist. No. 6, Morrison Cty. v. Johnson , 242 Minn. 539, 65 N.W.2d 668, 673 (1954) ("[A] validly adopted administrative rule becomes a part of the statute under which it is adopted."). An administrative rule promulgated pursuant to statutory authority " 'is valid and is as binding upon a court as a statute if it is (a) within the granted power, (b) issued pursuant to proper procedure, and (c) reasonable.' " State ex rel. Spannaus v. Hopf , 323 N.W.2d 746, 752 (Minn. 1982) (quoting 1 Kenneth Culp Davis, Administrative Law Treatise § 5.03, at 299 (1958) ); see also Marks v. Comm'r of Revenue , 875 N.W.2d 321, 327 (Minn. 2016) ("Administrative agencies may adopt regulations to implement or make specific the language of a statute.").
*21 Pursuant to her rule-making authority, the Commissioner promulgated Rule 8100, regarding ad valorem taxes for utilities, including pipeline systems. See generally Minn. R. 8100 (2017). Under the Rule, valuation and allocation is a four-step process. First, the Commissioner must "establish[ ] an estimate of the unit value for each utility company." Minn. R. 8100.0200. Then, the "resulting valuation is allocated to each state in which the utility company operates." Id. The Commissioner then subtracts the "value of property located in Minnesota that is exempt from property tax or that is locally assessed" from Minnesota's allocation. Id. Finally, the Commissioner apportions the remaining allocation "to the various taxing districts" in which the pipeline property is located. Id.
To establish unit value, the Commissioner relies primarily upon a mix of the cost and income methods. Minn. R. 8100.0300. The Rule also allows for the use of other indicators of value, including the market approach and obsolescence. Id. , subp. 4a. Generally, the Rule calls for an equal weighting of the cost and income methods. Id. , subp. 5. If the Commissioner concludes "the market indicator can be quantified, is reliable, and is indicative of value for a company," she may include it, but its weight cannot exceed five percent. Id. , subp. 4a. The Commissioner is also able to make weighting adjustments for obsolescence and other indicators of value, so long as she "state[s] in writing the findings that necessitate deviation from the default weightings ...." Id. The allocation equation, however, relies primarily on cost factors. Minn. R. 8100.0400, subp. 4.
In addition to allowing for discretion in the elements of the valuation formula, the Rule also includes a general reservation of the right for the Commissioner "to exercise discretion whenever the circumstances of a valuation estimate dictate the need for it." Minn. R. 8100.0200. The Commissioner may exercise this right to ensure: (a) "a balance between a prescriptive rule and sound appraisal judgment;" (b) "that all relevant data pertaining to value is considered;" (c) "that a reasonable estimate of market value is derived;" (d) "predictability and stability in estimations of market value;" and (e) "that utility valuation is easily understood and administered." Id.
We turn now to the legal issue in this case. This is not the first time the question of the applicability of Rule 8100 to the tax court has come before us. We directly addressed the question in MERC and concluded that the Rule is binding on the tax court. 886 N.W.2d at 801. In that case, the tax court deviated from the Rule at the final step of the valuation process: deducting the value of nonoperating and tax-exempt property. Id. ; see Minn. R. 8100.0500. As we explained in MERC , instead of "making the deduction at the end of the process, after each of the indicators of value has been considered and weighed in calculating the property's unit value," as called for in Minn. R. 8100.0500, the tax court "deduct[ed] the working capital and intangible assets from the income indicator of value," during the first step of the calculating the unit-value. 886 N.W.2d at 801.
In MERC , we rejected the tax court's conclusion that it was free to disregard Rule 8100 based on our decision in Northwest Airlines, Inc. v. Commissioner of Revenue , 265 N.W.2d 825 (Minn. 1978). See 886 N.W.2d at 801 (stating that " Northwest Airlines does not provide a basis for ignoring the requirements of binding administrative rules."). There, we explained that Northwest Airlines concluded that the tax court "was not required to use the Commissioner's formula if it would result in an inaccurate valuation of the property," which "reflects the general principle" of de novo review by the tax court.
*22 886 N.W.2d at 801. But, we held in MERC that the tax court erred in relying on Northwest Airlines , because the formula used by the Commissioner in that case was not found in an administrative rule, but instead had been "unilaterally adopted ... after negotiations with Northwest Airlines had collapsed prior to the filing of the appeal." Id. We made clear that Northwest Airlines does not "stand for the additional proposition ... that courts are free to ignore administrative rules when they believe those rules will result in an inaccurate valuation." Id.
In this case, the tax court concluded that it "is not bound by Rule 8100 in determining market value," for two reasons. First, the tax court implied that the formula provided by Rule 8100-the use of which, the tax court noted, was made necessary by the Commissioner's "limited staff and limited expertise" and the statutory time constraints under which the Commissioner must assess pipeline property-was likely to lead to an incorrect valuation, whereas the tax court's proceedings, which it asserted are free of such constraints, would not. Second, the tax court concluded that, because the text of Rule 8100 is "directed solely to the Commissioner" rather than to "the tax court," it "cannot make Rule 8100 applicable to the tax court simply by substituting 'tax court' for 'Commissioner,' at least not without violating the principles of statutory interpretation."
The tax court's first reason, that the Rule's formula is likely to result in an inaccurate valuation, is precisely the proposition we rejected in MERC . 886 N.W.2d at 801 ("Mere disagreement with an administrative rule is not a valid reason to disregard it."). As we said in MERC : "courts are free to reject [administrative rules] only when they conflict with the statutes they implement ." 886 N.W.2d at 801 (emphasis added) (citing Billion v. Comm'r of Revenue , 827 N.W.2d 773, 781 (Minn. 2013) ). The tax court did not hold that Rule 8100 violated any statute. Thus, the tax court is bound by Rule 8100.[1]
The tax court's second reason misapprehends the role of the tax court. It is true that the Rule as promulgated by the Commissioner speaks of actions the Commissioner must take in fulfilling her duty under Minn. Stat. § 273.33, subd. 1, to determine market value. If a taxpayer objects to the Commissioner's valuation, it is the duty of the tax court to determine whether the Commissioner has correctly valued property pursuant to the relevant statutes and rules. See Minn. Stat. § 271.05 (2018) (giving the tax court the "power to review and redetermine orders or decisions of the [C]ommissioner"). If the tax court concludes that the Commissioner has not correctly valued the property, the court must then do so itself-pursuant to those same statutes and rules. As we explained in MERC , in language equally applicable here: the Rule applies not only to the Commissioner, but also-"by extension"-to the tax court. 886 N.W.2d at 801.
Accordingly, the tax court is bound by Rule 8100, and it erred by concluding otherwise. If, in a particular case, the tax court concludes that the Commissioner's valuation of a pipeline system is not consistent with the statutes and the Rule, it must "fully explain its reasoning." See *23 Archway Mktg. Servs. v. Cty. of Hennepin , 882 N.W.2d 890, 896-97 (Minn. 2016).
CONCLUSION
For the foregoing reasons, we reverse the tax court and remand for proceedings consistent with this opinion.
Reversed and remanded.

When asked at oral argument whether it was "of the view that the tax court was correct that [Rule] 8100 does not apply to the tax court," EELP responded, "[n]o, that is not our position. ... [Rule] 8100 is binding on the [tax] court." EELP then argued (and argued in its brief to our court) that the tax court is not required to adhere to the rule because the discretion provided in the rule allows the tax court to reject the cost approach.